NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0727n.06

No. 13-2569

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 16, 2014
DEBORAH S. HUNT, Clerk

SUSAN PHILBRICK,                          )
    Plaintiff-Appellant,              )
                                   )
                                   )   ON APPEAL FROM THE UNITED STATES DISTRICT
                                   )   COURT FOR THE EASTERN DISTRICT OF
    v.                                )   MICHIGAN
                                   )
                                   )
ERIC HOLDER, JR.,                         )   OPINION
Attorney General,                         )
                                   )
    Defendant-Appellee.               )

Before:   COOK and GRIFFIN, Circuit Judges; and RICE, District Judge.*

RICE, District Judge.   Susan Philbrick, an employee of the United States Marshals

Service, appeals from the district court's order granting Attorney General Eric Holder, Jr.'s,

motion for summary judgment.   She maintains that she was discriminated against on the basis of

sex and race when she was passed over for a promotion in 2009.   She also maintains that she was

discriminated against on the basis of sex and was retaliated against for having filed a complaint of

discrimination with the Equal Employment Opportunity Commission when she was passed over

for a subsequent promotion in 2011.   For the reasons set forth below, we AFFIRM IN PART and

REVERSE AND REMAND IN PART.

**I.**

Susan Philbrick, a white female, has been employed by the United States Marshals Service

("USMS") since 1989.   She served as a Supervisory Deputy United States Marshal in the Western

District of Michigan from 1998 until 2001, and has served in that same role in the Eastern District

---

*The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by
designation.

of Michigan since 2002. In April of 2009, Philbrick applied for a position as Assistant Chief Deputy U.S. Marshal ("ACDUSM") in the Eastern District of Michigan.

Pursuant to the Merit Promotion Selection Process, after a vacancy is posted, the Human Resources division of the USMS develops a list of the best qualified candidates for that position. Each applicant is assigned a numerical score based on education, experience, training, and awards. This score is combined with the applicant's score on the merit promotion examination to create a package score. This package score is used only to develop a list of the best qualified candidates; it is not shared with anyone else involved in the hiring decision. The best qualified candidates then participate in a structured interview, during which they are evaluated by a three-person panel for perception, decisiveness, judgment, leadership, organization and planning, adaptability, interpersonal skills, and oral communication.

The U.S. Marshal for the district where the vacancy exists then reviews the resumes and interview ratings of the best qualified candidates, ranks them, and makes a recommendation to the Career Board. The Career Board consists of USMS law enforcement employees appointed by the Director of the USMS ("the Director"). It meets about four times each year and reviews the recommendations for 45-100 job vacancies at each meeting. In order to expedite the process, the chairperson of the Career Board assigns one "Presenter" for each vacancy. The Presenter is charged with reviewing the resumes, interview ratings, and the Marshal's recommendation for the open position, and making his or her own recommendation to Career Board. In turn, the Career Board makes a recommendation to the Director, who makes the final decision.

When Philbrick applied for the ACDUSM position in 2009, she had the highest package score of all of the applicants. In addition, her supervisor, Marshal Robert Grubbs, ranked her first

among the five best qualified applicants and recommended that she be hired. Grubbs ranked Thomas Smith second and Roberto Robinson third.

Robert Fagan, the chairperson of the Career Board, assigned himself as the Presenter for this position. Fagan, however, did not follow Marshal Grubbs' recommendation. Instead, he recommended Roberto Robinson, a Hispanic male, for the position. The Career Board and Director John Clark followed suit, and Robinson was hired as the ACDUSM for the Eastern District of Michigan. On July 27, 2009, Philbrick filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was denied the promotion based on race and gender discrimination.

In November of 2009, Philbrick became the subject of an Internal Affairs investigation after being accused of improperly recommending her niece for a position with the agency. This investigation was still ongoing in January of 2011 when Roberto Robinson received another promotion and was appointed Chief Deputy U.S. Marshal in the Northern District of Ohio. When the opening for his ACDUSM position in the Eastern District of Michigan was posted, Philbrick again applied.

On January 31, 2011, the EEOC commenced a hearing on Philbrick's charge of discrimination arising from her non-promotion in April of 2009. At that hearing, Marshal Grubbs was harshly cross-examined by counsel for the agency concerning his motives for recommending Philbrick for the promotion and the procedures he followed. The hearing was continued until March 28, 2011.

In the meantime, on March 4, 2011, Marshal Grubbs recommended Mark Jankowski, a white male, for the open ACDUSM position. Grubbs ranked Philbrick third among the best

qualified candidates, behind Jankowski and "Candidate 85." Grubbs then received notice that, due to Philbrick's pending EEO charge, the position would be held in abeyance pending completion of those proceedings.

Grubbs was subsequently given a new list of best qualified candidates for the ACDUSM position. This time, he ranked Jankowski first and Philbrick second. John Clark was assigned as the Presenter.[1] Clark recommended Jankowski to the Career Board. In turn, the Career Board recommended Jankowski to Director Stacia Hylton, who appointed Jankowski to fill the position.

On September 19, 2011, Philbrick filed another complaint with the EEOC, alleging gender discrimination and retaliation in connection with the most recent failure to promote her. Philbrick later filed suit against her employer, Attorney General Eric Holder, Jr. Her Amended Complaint alleged race and gender discrimination in connection with her 2009 non-promotion and gender discrimination and retaliation in connection with her 2011 non-promotion.

The district court granted the Attorney General's motion for summary judgment in its entirety, finding no genuine issue of material fact on any of Philbrick's claims. Philbrick now appeals that decision.

## II.

We review *de novo* a district court's ruling on a motion for summary judgment. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014). Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." We must view facts in the record and reasonable inferences that can be drawn from those facts in the light most

---

[1]This John Clark is not the same John Clark who was the Director of the USMS when Robinson was hired in 2009.

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We do not weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**III.**

Title VII of the Civil Rights Act of 1964 prohibits federal agencies from employment discrimination "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). It is a violation of Title VII to fail to promote an employee because of his or her membership in a protected class. *See, e.g.*, *White v. Columbus Metro. Hous. Auth*., 429 F.3d 232, 240 (6th Cir. 2005).

A plaintiff may establish a claim of discrimination either by presenting direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *Kline v. Tenn. Valley Auth*., 128 F.3d 337, 348 (6th Cir. 1997). Where, as here, the claim is based on circumstantial evidence, we use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).

Under that framework, a plaintiff must first establish a prima facie case of discrimination, the elements of which vary slightly depending on the theory asserted. To establish a prima facie case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that:

> (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

Case No. 13-2569, *Philbrick v. Holder*

*White*, 429 F.3d at 240. A plaintiff's burden at the prima facie stage is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981).

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for its adverse action. If the defendant satisfies its burden, the burden shifts back to the plaintiff to identify evidence from which a reasonable jury could find that the stated reason is a pretext for discrimination. Pretext is demonstrated "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co*., 231 F.3d 1016, 1021 (6th Cir. 2000).

In order "to survive summary judgment, a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007)). The plaintiff is not required to also produce evidence that discrimination was the real reason for the adverse employment action. *Id. See also Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) ("[W]e do not routinely require plaintiffs to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment.") (internal quotation marks omitted). As the Supreme Court noted in *Reeves v. Sanderson Plumbing Products, Inc.*:

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000).

## A.

Philbrick maintains that she was discriminated against on the basis of race and gender in connection with the 2009 ACDUSM promotion when Roberto Robinson, a Hispanic male, was selected instead of her.

1.  Reverse Race Discrimination

The district court granted summary judgment in favor of the Attorney General on Philbrick's reverse race discrimination claim. Noting that "[a]n employer cannot intentionally discriminate against an individual on the basis of race if he is unaware of that individual's race," *Johnson v. N.W. Airlines*, No. 94-1076, 1995 WL 242001, at *3 (6th Cir. Apr. 24, 1995), the court found that Philbrick had failed to create a genuine issue of material fact concerning whether Director John Clark, the ultimate decision-maker, knew that she was Caucasian. Philbrick claimed that she had briefly met Clark on one occasion several years earlier. Clark, however, testified that he had no memory of meeting her.

On appeal, Philbrick argues that because Presenter Fagan was the *de facto* decision-maker, the relevant question is whether Fagan knew that she was Caucasian. *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2011) (discussing the "cat's paw" theory of liability). Although she does not allege that Fagan knew her personally, she claims that Fagan should have inferred that she was Caucasian based solely on USMS workforce demographic statistics. Workforce statistics, however, are insufficient to create a genuine issue of material fact concerning whether Fagan knew that Philbrick was Caucasian. The district court properly found that Philbrick failed to create a genuine issue of disputed fact concerning whether the decision-makers were aware of her race.

When Robinson was selected for the position instead of Philbrick, Grubbs speculated that perhaps the agency was trying to right past wrongs in terms of discrimination against minorities. Fagan allegedly knew that Robinson was Hispanic because Robinson was formerly in Fagan's chain-of-command. Fagan and Clark admit that diversity is considered in every hiring decision but contend that Robinson was selected not because of his race but because of his superior qualifications.

Even if the decision-makers did know that Philbrick was Caucasian, summary judgment would still be warranted on this claim. Given that this is a case involving a claim of *reverse* race discrimination, Philbrick faces a higher burden. In order to establish a prima facie case of reverse race discrimination, she must show "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)). Here, Philbrick presented no evidence to support such a finding.

For all of these reasons, the district court properly granted summary judgment in favor of the Attorney General on Philbrick's claim of reverse race discrimination.

2. Gender Discrimination

Philbrick also argues that she was discriminated against in connection with the 2009 promotion on the basis of her gender. Because she has no direct evidence of gender discrimination, the *McDonnell Douglas* burden-shifting framework applies. The first three elements of Philbrick's prima facie case are undisputed. At issue is whether Philbrick and Robinson had similar qualifications for the ACDUSM position.

Case No. 13-2569, *Philbrick v. Holder*

The Attorney General argued that Philbrick could not establish a prima facie case of discrimination because she could not show that she and Robinson were similarly qualified. The district court assumed, without deciding, that Philbrick had established a prima facie case of discrimination and moved on to the next stages of the *McDonnell Douglas* analysis.

On appeal, the Attorney General contends that, because Philbrick cannot satisfy the fourth element of her prima facie case, the district court need not have inquired any further. He invites the court to engage in a detailed comparison of the relative qualifications of Philbrick and Robinson. However, at the prima facie stage, the court compares the qualifications of the two applicants in very general terms, leaving the more rigorous analysis for the later stages of the *McDonnell Douglas* test. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813–14 (6th Cir. 2011). In this case, Philbrick and Robinson both had considerable training and experience, both were on the list of "best qualified" candidates, and both were ranked among the top three candidates by Marshal Grubbs. Under these circumstances, the district court properly assumed, without deciding, that Philbrick had established a prima facie case of gender discrimination.[2] *Id.* at 814 (holding that although the candidates had different strengths and weaknesses, their education and experience made them similarly qualified for purposes of a prima facie case).

---

[2]The district court also properly refused to address the Attorney General's argument that Philbrick could not establish a prima facie case of gender discrimination because she admitted that Thomas Smith, a similarly-situated male whom Grubbs ranked second, was *also* passed over for the promotion in favor of Robinson. Citing *Zambetti*, 314 F.3d at 255, the Attorney General argued that, under the fourth prong of the prima facie case, Philbrick must show that a similarly-situated male, *i.e.*, Thomas Smith, was treated differently than she was. For purposes of establishing a prima facie case, however, the relevant question is whether Philbrick and Robinson—the person who was selected for the position—possessed similar qualifications. *See Provenzano*, 663 F.3d at 814 ("In a failure to promote claim, the emphasis in the fourth element is on the relative qualifications of the plaintiff and the employee who actually received the promotion.").

The district court then found that the Attorney General had articulated a legitimate, non-discriminatory reason for selecting Robinson for the ACDUSM position. More specifically, the Attorney General presented evidence that Robinson was selected because he had better interview scores and was perceived to have a more well-rounded background. The district court then concluded that Philbrick had failed to present sufficient evidence from which a reasonable jury could find that the proffered reason was pretextual. It therefore granted summary judgment in favor of the Attorney General on Philbrick's claim of gender discrimination.

On appeal, Philbrick argues that genuine issues of material fact preclude summary judgment on this claim. We agree. Philbrick maintains that she was the better qualified candidate and should have been selected instead of Robinson. In *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S. Ct. 1195, 163 L. Ed.2d 1053 (2006), the Supreme Court held that "qualifications evidence may suffice, at least in some circumstances, to show pretext." In most situations, an employer wants to hire the best qualified candidate. If an applicant is significantly better qualified than the competition, but not selected, it can be inferred that discrimination played a part in the decision. *Hamilton*, 666 F.3d at 1352 (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc)).

> "Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Bartlett v. Gates*, 421 Fed. Appx. 485, 490–91 (6th Cir. 2010) (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627–28 (6th Cir. 2006)).

*Provenzano*, 663 F.3d at 815.

Here, Philbrick's claim survives summary judgment because she was the plainly superior candidate. As previously noted, Philbrick's package score was the highest of all of the applicants, although this fact was not shared with any of the relevant decision-makers. Admittedly, Robinson performed better than Philbrick in the interview. Philbrick received five "average" and three "weak" interview ratings; Robinson received five "strong" and three "average" ratings. However, because these ratings are inherently subjective, they deserve careful scrutiny. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982).

After reviewing the interview scores and the resumes, Marshal Grubbs recommended that Philbrick be selected for the job. She had twenty years of experience with the USMS, including eleven years as a Supervisory Deputy U.S. Marshal and a stint as Acting ACDUSM. Not only had she worked as a supervisor in two different districts, but she had significant supervisory experience in each of the areas that the ACDUSM job entails: judicial security, court security, prisoner operations, enforcement, and asset forfeiture. She had also performed numerous collateral duties. Moreover, she had initiated and implemented the Detroit Fugitive Apprehension Team, which was very successful. Grubbs also factored in Philbrick's strong leadership skills, interpersonal skills, and dedication to the job, along with her existing ties to the District.

In comparison to Philbrick, Robinson had only twelve years of experience with the USMS and only three years of experience as a Supervisory Deputy U.S. Marshal. He had not performed nearly as many collateral duties as Philbrick and had no ties to the Eastern District of Michigan. He had little or no experience supervising judicial security or enforcement. However, he had assisted in evacuation, rescue, and recovery efforts during the 9/11 terrorist attacks, was a training

officer for TDY Inspectors at USMS headquarters, and acted as a Contract Officer Technical Representative. In addition, he had Top Secret clearance and was working as a Supervisory Deputy U.S. Marshal in a large sub-office in Fort Lauderdale.

Even if Robinson arguably had a broader overall range of experience than Philbrick did, she clearly had significantly more relevant supervisory experience. From an objective standpoint, she was a plainly superior candidate, such that no reasonable employer would have chosen Robinson over her. As such, there is a triable issue of fact as to pretext. *Provenzano*, 663 F.3d at 815. This is particularly true, given Fagan's concession at the EEOC hearing that Philbrick was better qualified than Robinson.

Even if Philbrick was not the "plainly superior" candidate, she was at least as qualified as Robinson, there is other evidence in the record from which a reasonable jury could find that the Attorney General's explanation for selecting Robinson is unworthy of belief. *See Hamilton*, 666 F.3d at 1352 (noting that other flaws in the employer's explanation may also be indicative of pretext).

Evidence shows that 91–96% of the time, the Presenter adopts the U.S. Marshal's recommendation, the Career Board adopts the Presenter's recommendation, and the Director adopts the Career Board's recommendation. Although no one is bound by the recommendation made at the lower level, it is the exception rather than the rule that the candidate recommended by the Marshal is not selected to fill the position. Grubbs testified that on the few occasions that his recommendation was not followed, he was contacted to discuss the applicants before any final decision was made. In this case, no one contacted him before rejecting his recommendation. These procedural irregularities are not determinative, but they do arouse suspicion of pretext.

A reasonable jury could find that Fagan was the *de facto* decision-maker in this case. As was usually the case, his recommendation was followed by the Career Board and by the Director. Although the Career Board and the Director have access to the same application materials the Presenter does, evidence shows that their review of those materials is generally not nearly as thorough as the Presenter's. Here, Director Clark testified that if the Career Board had recommended Philbrick, he would have followed that recommendation.

In Fagan's notes for his presentation to the Career Board, he wrote that he was recommending Robinson rather than Philbrick because Philbrick had worked her whole career in Detroit and had not interviewed as well, and because Robinson was more well-rounded, having served as a Supervisory Deputy U.S. Marshal in Miami and Fort Lauderdale and at USMS headquarters. Fagan has subsequently admitted that he mistakenly overlooked Philbrick's supervisory experience in the Western District of Michigan. He has also admitted that Robinson's supervisory experience pales in comparison to Philbrick's, and that Robinson had no major accomplishments comparable to Philbrick's initiation of the fugitive task force. At the EEOC hearing, Fagan conceded that Philbrick was "the more qualified" candidate.

Fagan nevertheless attempted to justify his recommendation by citing to alleged flaws in Philbrick's resume and Grubbs's recommendation. In hindsight, he argues that Philbrick's application did not adequately highlight all of her accomplishments, and that Grubbs's recommendation was "too vague." He testified that but for these inadequacies, he "would have definitely, definitely recommended Ms. Philbrick." Fagan admits, however, that based on Philbrick's resume, and particularly her service as an Acting ACDUSM, he could infer the breadth

13

of her experience.   As to the claim that Grubbs's recommendation was "too vague," Fagan admits that he has sometimes chosen candidates with much less specific recommendations.

Typically, the court allows an employer wide leeway in determining relevant hiring criteria, particularly when selecting management personnel.   *See Browning v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006).   Nevertheless, the court will not blindly accept an employer's alleged business judgment in the face of a claim of discrimination.   *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

Under the "honest belief" rule, if the employer honestly, but mistakenly, believes in the proffered reason given for the hiring decision at issue, then the employee cannot establish the requisite pretext.   *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).   However, in order to establish an honestly held belief, the employer must produce evidence that it made a "reasonably informed and considered decision."   *Id.* at 807.   If the asserted business judgment is so "ridden with error" that the employer could not have honestly relied on it, pretext may be shown.   *In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988) (quoting *Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir. 1980)).   *See also Smith*, 155 F.3d at 807 (noting that the relevant inquiry is whether the error was "too obvious to be unintentional").

Here, Philbrick has presented sufficient evidence from which a reasonable jury could find that Fagan did not make a reasonably informed and considered decision that Robinson was the better qualified candidate, and that the proffered reason for selecting Robinson is unworthy of belief.   Fagan's summary rejection of Grubbs's recommendation, his significant oversights in comparing the qualifications of the two candidates, and his shifting explanations for why he recommended Robinson instead of Philbrick, combine to create triable issues of fact.   *See*

*Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.").

According to the dissent, the irregularities in the selection process, Fagan's oversights concerning Philbrick's qualifications, and his alleged reasons for not accepting Grubbs's recommendation do not constitute evidence of illegal discrimination, but are instead "qualifications evidence, repurposed by plaintiff as evidence of discrimination." We disagree. As this court held in *Jenkins v. Nashville Public Radio*, 106 F. App'x 991 (6th Cir. 2004), cited and distinguished by the court in *Bender*, 455 F.3d at 627, evidence of "irregularities in the application and selection process" and "inconsistencies in the reasons given by [the employer] for not hiring [plaintiff]," along with "evidence of her allegedly superior qualifications, which, if believed by the trier of fact, could lead to the conclusion" that the plaintiff was discriminated against, is sufficient to raise a genuine issue of material fact concerning pretext. *Jenkins*, 106 F. App'x at 995.

Admittedly, Philbrick points to little evidence of a gender-based discriminatory animus. Nevertheless, as the Supreme Court noted in *Reeves*, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." 530 U.S. at 147. Although this is a close call, we must draw all reasonable inferences in Philbrick's favor. It may be inferred that the relevant decision-makers knew that Philbrick was a female based on her first name, Susan. In light of Fagan's admission that Philbrick had superior qualifications, we believe that a reasonable jury could find that Philbrick was a victim of gender discrimination. We therefore reverse the district court's order granting summary judgment in favor of the Attorney General on Philbrick's claim of gender discrimination in connection with the 2009 promotion.

**B.**

Philbrick also maintains that she was again discriminated against on the basis of gender when she was passed over for the ACDUSM promotion in 2011, this time in favor of Mark Jankowski. Grubbs recommended that Jankowski be offered the position. Presenter John Clark and the Career Board concurred in that recommendation, as did Director Stacia Hylton.

Again, the district court appears to have assumed, without deciding, that Philbrick could establish a prima facie case of gender discrimination. The court found that the Attorney General had articulated legitimate, non-discriminatory reasons for hiring Jankowski instead of Philbrick, in that Grubbs believed that Jankowski was better qualified. He touted Jankowski's experience, leadership abilities, judgment, and organizational skills. Presenter Clark also testified that, in his opinion, Jankowski had a stronger resume. Grubbs further believed that Philbrick was ineligible for promotion due to the pending Internal Affairs investigation involving her niece.

The district court found that Philbrick had failed to establish a genuine issue of material fact as to whether the proffered reasons were pretextual. On appeal, Philbrick argues that the district court erred in so finding. Notably, however, Philbrick devotes very little of her appellate brief to this claim of gender discrimination. She concedes that, with respect to the 2011 promotion, her "principal contention" is that she was denied the promotion in retaliation for filing her EEOC charge.

For the reasons set forth in the next section of this opinion, we find that Philbrick has presented sufficient evidence from which a reasonable jury could find that the proffered reasons for hiring Jankowski were pretextual. Nevertheless, this is one of those cases discussed in *Reeves* where "although the plaintiff has established a prima facie case and set forth sufficient evidence to

16

reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."   530 U.S. at 148.

Indeed, the only evidence of gender discrimination identified by Philbrick is Grubbs's statement that Jankowski is a "stronger field general."   Philbrick maintains that this indicates sex stereotyping.   This singular characterization is woefully insufficient to create a genuine issue of material fact concerning whether Philbrick was denied the promotion because she is a woman. Moreover, the fact that Grubbs recommended Philbrick for the promotion in 2009 cuts against a finding that he had a discriminatory animus in recommending Jankowski in 2011.   In *Wexler*, we held that one can infer a lack of discrimination from the fact that the same individual both hired and fired the employee.   317 F.3d 564, 572–73 (6th Cir. 2003).   This "same actor" inference can logically be extended to this situation.   Having previously recommended Philbrick for the 2009 promotion, it can be inferred that Grubbs, whose 2011 recommendation was adopted by the ultimate decision-maker, had no gender-based discriminatory animus.

For these reasons, we affirm the district court's decision to grant summary judgment in favor of the Attorney General on Philbrick's claim of gender discrimination in connection with the 2011 failure to promote.

**IV.**

Finally, Philbrick alleges that she was passed over for the 2011 promotion in retaliation for having filed a charge of race and gender discrimination with the EEOC in 2009.   Title VII makes it unlawful for an employer to retaliate against an employee because that employee opposed a discriminatory practice or made a charge of discrimination.   42 U.S.C. § 2000e-3(a).   As with a

claim of discrimination, a plaintiff may establish a claim of retaliation either through direct or circumstantial evidence, using the same *McDonnell Douglas* burden-shifting framework.

In the absence of direct evidence of retaliation, a plaintiff may establish a prima facie case of retaliation under Title VII by demonstrating that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Jones v. Johanns,* 264 F. App'x 463, 466 (6th Cir. 2007). With respect to the "causal connection," the plaintiff must establish that "but for" the protected activity, the materially adverse action would not have occurred. *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532–33 (2013).

If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. If the defendant satisfies its burden, the plaintiff must then demonstrate that the stated reason is pretextual. *Laster*, 746 F.3d at 730.

Here, the first three elements of the prima facie case are undisputed. The district court, however, found insufficient evidence of any causal connection between Philbrick's filing of the EEOC charge and the failure to promote her in 2011. Philbrick argued that Grubbs testified at her EEOC hearing on January 31, 2011, and was subject to harsh cross-examination by counsel for the USMS concerning the allegedly improper bases for Grubbs's recommendation that Philbrick be hired for the ACDUSM position in 2009 and Grubbs's alleged failure to follow agency interviewing policies. Grubbs was also chastised for having told Philbrick of his

18

recommendation before the Director made a final decision. Other USMS employees were also required to testify at the hearing. Less than five weeks after the hearing, on March 4, 2011, Grubbs submitted his recommendation for the again-vacant ACDUSM position. This time, he ranked Philbrick third, below Jankowski and Candidate 85. Philbrick maintains that Grubbs felt pressured by his superiors to recommend someone other than her.

The district court acknowledged that, in some cases, temporal proximity between the adverse employment action and the protected activity may be enough to establish the requisite causal connection. *See, e.g., Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").

The district court found, however, that the adverse employment action at issue did not occur until July of 2011, when Director Hylton made the final decision to hire Jankowski instead of Philbrick. This widened the temporal gap from five weeks to six months, which the court found to be too long to establish the requisite causal connection. The court further noted that Grubbs revised his rankings in May of 2011, upgrading Philbrick's ranking from third to second.

On appeal, Philbrick argues that the district court erred in finding that she had failed to create a genuine issue of material fact concerning the requisite causal connection. We agree. As an initial matter, the district court erred in establishing July of 2011, the date the final decision was made to hire Jankowski, as the date of the adverse employment action. In *Hamilton*, the court held that it was appropriate to consider when the employer "took a first step toward the adverse action." 666 F.3d at 1358. In this case, the "first step" was Grubbs's March 4, 2011,

recommendation, when he ranked Philbrick third, behind Jankowski and Candidate 85.   The fact that he subsequently revised his recommendation, ranking her second, behind Jankowski, is largely irrelevant given that Jankowski was still his top pick and that Presenter Clark, the Career Board, and Director Hylton all followed his recommendation.

Therefore, the question is whether the five-week gap between the January 31, 2011, hearing, and the March 4, 2011, initial recommendation is close enough to establish a causal connection.   Standing alone, probably not.   "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."   *Mickey*, 516 F.3d at 525. *See also Montell v. Diversified Clinical Servs., Inc.*, –F.3d–, 2014 WL 2898525, at *6 (6th Cir. June 27, 2014) (noting that "combining temporal proximity with other evidence of retaliatory conduct is enough to establish a causal connection").

Notably, the court may also consider evidence of pretext to buttress this prong of the prima facie case.   In *Cantrell v. Nissan North America Inc.*, 145 F. App'x 99, 107 n.2 (6th Cir. 2005), we noted the "overlap between the causal connection requirement and a showing that the proffered reason for termination was not the actual reason," and held that, in retaliation cases, the same type of evidence may be used to prove both.

Drawing all reasonable inferences in favor of Philbrick and considering not only the temporal proximity but also the evidence that the proffered reason for hiring Jankowski was pretextual, as discussed below, we find that there is a genuine issue of material fact concerning the requisite causal connection.   Based on the evidence presented, a reasonable jury could find that, but for the fact that Philbrick filed the EEOC charge of discrimination, Grubbs would have

20

recommended her for the ACDUSM vacancy, and she would have been selected for the job. Presenter Clark testified that he would have concurred had Grubbs recommended Philbrick instead. Likewise, Director Hylton testified that she would have selected Philbrick had the Career Board so recommended. We therefore conclude that Philbrick has established a prima facie case of retaliation.

The Attorney General satisfied his burden of articulating legitimate, non-retaliatory reasons for selecting Jankowski instead of Philbrick. As noted earlier, Grubbs cited two such reasons: (1) Jankowski was better qualified; and (2) Grubbs believed that Philbrick was ineligible for promotion due to the pending Internal Affairs investigation.

Where the employer asserts more than one reason for the adverse employment decision, the plaintiff must prove that each reason is pretextual. *Smith*, 155 F.3d at 806. With respect to the first reason asserted, Jankowski's allegedly superior qualifications, Philbrick seeks to establish pretext by showing that this did not actually motivate the decision. She contends that the circumstantial evidence makes it more likely than not that retaliation was the true reason she was not promoted. Philbrick maintains that, based on the harsh cross-examination Grubbs endured by USMS counsel at the EEOC hearing, he felt compelled to recommend someone else for the vacancy.

In March of 2011, Grubbs ranked Philbrick not only behind Jankowski, but also behind Candidate 85, whose qualifications were clearly inferior to hers. Notably, when he revised his rankings in May of 2011, Grubbs ranked Candidate 85 behind Candidate 84, who had no supervisory experience at all. Philbrick notes that Grubbs initially denied ranking her below

Candidate 85 but was later forced to admit that he had. These rather suspicious rankings and Grubbs's attempted cover-up support a finding of pretext.

There is other evidence from which a reasonable jury could find that Grubbs's proffered reasons for ranking Jankowski above Philbrick are unworthy of belief. Although Grubbs testified that Deputy U.S. Marshal Lori Ciotti told him that she favored Jankowski over Philbrick, Ciotti denies that Grubbs ever asked for her opinion. Grubbs also testified that USMS employee Russ Tithof complained to him that Philbrick spent too much time in the gym and delegated supervisory duties to subordinates. Tithof, however, denied making those statements.

Chief Deputy U.S. Marshal James Andreski, who had supervised both Jankowski and Philbrick in the past, told Grubbs that he thought that Philbrick was the better candidate. Even though Andreski would be supervising whichever applicant was selected, Grubbs did not tell him that he planned to recommend Jankowski instead. When Philbrick was passed over the second time for a promotion, Andreski expressed his belief that "something stinks."

Viewing all of this evidence in light most favorable to Philbrick and drawing all reasonable inferences in her favor, we find a genuine issue of material fact as to whether the Attorney General's claim that Jankowski was the better qualified candidate is pretextual.

The court then turns to Grubbs's second asserted reason for making the recommendation he did. Grubbs testified that the "number one" reason he recommended Jankowski over Philbrick was his firm, but ultimately mistaken, belief that she was ineligible for a promotion because of the pending internal affairs investigation concerning her niece. As previously noted, the "honest belief" rule is a viable defense only if the employer made a "reasonably informed and considered decision." *Smith*, 155 F.3d at 807–08.

22

Philbrick has presented evidence that even though she and ACDUSM Commins both asked Grubbs to check to see if the pending investigation disqualified Philbrick from being considered for promotion, Grubbs made no such inquiry. She also presented evidence that although Grubbs later claimed that he was told by the Chief of Internal Investigations and by Human Resources officers that Philbrick would be ineligible for a promotion, they have denied making any such statements to Grubbs, and they agree that Philbrick would, in fact, be eligible for promotion despite the pending investigation. Finally, Philbrick notes that even though Grubbs maintains that she was ineligible for promotion, he did not tell her that. Instead, he actively misled her into believing that she was a serious contender for the ACDUSM position despite the ongoing investigation. Based on this evidence, a reasonable jury could find that Grubbs did not honestly believe that the Internal Affairs investigation rendered Philbrick ineligible for promotion.

Grubbs maintains that even if he thought that Philbrick was eligible for promotion, he would have recommended Jankowski anyway based on his superior credentials. For reasons previously discussed, there is a triable issue of fact concerning whether this proffered reason is worthy of belief.

Given that we find genuine issues of material fact with respect to a causal connection and pretext, we reverse the district court's order granting summary judgment in favor of the Attorney General on Philbrick's retaliation claim.

## V.

In conclusion, we AFFIRM the district court's order granting summary judgment in favor of Defendant-Appellee Attorney General Eric Holder, Jr., with respect to Plaintiff-Appellant Susan Philbrick's claim of reverse race discrimination in connection with the 2009 promotion and

her claim of gender discrimination in connection with the 2011 promotion. However, we REVERSE the district court's order granting summary judgment in favor of the Attorney General with respect to Philbrick's claim of gender discrimination in connection with the 2009 promotion and her claim of retaliation in connection with the 2011 promotion, and REMAND for further proceedings consistent with this opinion.

Case No. 13-2569, *Philbrick v. Holder*

GRIFFIN, Circuit Judge, concurring in part and dissenting in part.

Balancing an employee's right against illegal discrimination against the employer's prerogative to make fundamental managerial decisions regarding whom to hire, fire, and promote is a central concern in employment discrimination cases. Our judicial duty requires us to reverse violations of the law, not to place a thumb on the scale in favor of a particular employment outcome. Indeed, we have cautioned our courts against adopting the "illegitimate role of acting as . . . 'super personnel department[s],'" when attempting to strike this balance. *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006) (citation omitted). In my view, the majority crosses this line by impermissibly "overseeing and second guessing [the] employer['s] business decisions." *Id*. Accordingly, I respectfully concur in part and dissent in part. I would affirm the summary judgment granted in favor of the attorney general on all claims.

I.

First, turning to plaintiff's 2009 failure-to-promote claim, I disagree with the majority that plaintiff has shown pretext based on her "plainly" superior qualifications. The leading Sixth Circuit case addressing qualifications evidence in employment is *Bender v. Hecht's Department Stores*. *Bender* was decided shortly after *Ash v. Tyson Foods, Inc*., 546 U.S. 454 (2006). In *Ash*, the Supreme Court addressed the Eleventh Circuit's standard that "[p]retext can be established through comparing qualifications *only* when the disparity in qualifications is so apparent as to virtually jump off the page and slap you in the face." *Id*. at 456–57 (emphasis added; citation omitted). The Court rejected this formulation, noting that it had previously held, in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981), that an employer misjudging an applicant's qualifications "may be probative" of whether the employer's reasons for

25

the employment decision were pretext for discrimination. *Id*. at 457. Accordingly, the *Ash* Court held that "qualifications evidence may suffice, at least in some circumstances, to show pretext." *Id*. However, the Court declined to "define more precisely what standard should govern pretext claims based on superior qualifications." *Id*. at 458.

*Bender* addressed a relative-qualifications pretext claim post-*Ash*. Our court in *Bender* explained that "acknowledging that evidence of comparative qualifications 'may be probative' of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive." *Bender*, 455 F.3d at 626. *Bender* thus explained what was required of a plaintiff in a relative-qualifications case:

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents *other evidence of discrimination*. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better* than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. *In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual*.

*Id.* at 626–27 (citation omitted; emphasis added). *See also id*. at 627 ("[W]hen qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation.").

In other words, a plaintiff may demonstrate pretext based on qualifications evidence using one of two methods: (1) by showing that she was so significantly more qualified than the other candidate that no reasonable employer would have chosen the other candidate (in which case other

evidence of discrimination is not required); or (2) by showing that she was as qualified or slightly more qualified than the other candidate (in which case other evidence of discrimination is required).

Here, plaintiff Susan Philbrick argues that her "qualifications superiority was significant enough to alone" demonstrate pretext. In addition, she contends that the record contains sufficient "other evidence" demonstrating illegal discrimination. The majority appears to accept both arguments, holding that plaintiff prevails under the "so significantly better" standard and also under the "other evidence" approach. I respectfully disagree.

First, the evidence does not show that Philbrick's qualifications were "so significantly better than [Robinson's] qualifications that no reasonable employer would have chosen" her over Robinson. *Bender*, 455 F.3d at 627. Curiously, the majority concedes that Robinson had a "broader overall range of experience" than Philbrick, yet simultaneously holds that plaintiff was the "plainly superior candidate." I agree with the majority that Robinson had a broader range of experience than plaintiff—it is precisely for this reason that I disagree with the majority's conclusion. Philbrick's and Robinson's relative employment histories demonstrate that each had significant experience. For example, although Robinson had worked for the Marshals Service for eight fewer years than plaintiff, Robinson had nonetheless worked for the Marshals Service for twelve years—hardly an insignificant amount of time. Although the majority accepts that plaintiff had significantly more supervisory experience than Robinson, this is not altogether clear, as career board member Fernando Karl testified that Robinson's and plaintiff's "overall managerial experience . . . was fairly equal."

Moreover, even assuming that Philbrick had more supervisory experience than Robinson and, having worked there for some time, had more ties to the particular district, Robinson had a wider breadth of experiences. For example, Robinson had worked as a supervisor in a sub-office, whereas plaintiff had not. Robinson worked with the Deputy Attorney General, whereas plaintiff did not. Robinson had experience working at headquarters; plaintiff did not. He had assisted in the recovery efforts following the September 11, 2001, terrorist attacks; plaintiff did not. Also, Robinson was fluent in Spanish, whereas plaintiff's resume listed no special language skills. Robinson had experience working as a contract officer technical representative (COTR), managing a $2.8 million contract, whereas plaintiff had no COTR experience and did not indicate on her resume that she had managed any large budget amount. Furthermore, Robinson had a top secret clearance; plaintiff did not. Finally, Robinson had worked in five different offices: Fort Lauderdale, Miami, Arlington, Washington, and New York City. By contrast, Philbrick had worked only in Michigan.

Importantly, Philbrick concedes that Robinson's interview scores were "significantly higher" than hers. Indeed, Robinson had five "strong" interview ratings and three "average," whereas plaintiff had three "weak" interview ratings and five "average." Regarding this consideration, Robinson was clearly the superior candidate. As every employer knows, personal one-on-one interviews are a crucial part of the hiring process. While the scoring of an interview is largely subjective, the significance of the human interaction between a supervisor and prospective employee should not be discounted. Effective and productive interpersonal relationships are important in many positions, including the Marshals Service.

Finally, although the majority makes much of the fact that Philbrick's composite merit promotion scores were higher than Robinson's, this fact is immaterial because no one with decisionmaker authority was aware of those scores.

Based on this record, I conclude that Philbrick's qualifications were not "so significantly better" than Robinson's that it would have been unreasonable for the Marshals Service to select Robinson over her. This is not to say that plaintiff was unqualified. Indeed, a reasonable employer could easily have concluded that Philbrick was the better candidate for the position. However, absent illegal discrimination, this is the employer's prerogative. As we held in *Bender*, "[i]f two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's." *Bender*, 455 F.3d at 628.

Because I agree with the district court's ruling that Philbrick was only "as qualified or marginally more qualified" than Robinson, the next inquiry is whether the record contains the additional requirement of "other probative evidence of discrimination." *Id*. at 626, 627. Philbrick and the majority rely on several facts as "other probative evidence of discrimination," including: (1) that the Marshal's recommendation is "usually" followed by the career board and the director; (2) that Presenter Fagan admitted to overlooking plaintiff's supervisory experience; and (3) characterizing Marshal Grubbs' assessment of plaintiff's credentials as flawed. But, this is not evidence of illegal discrimination. Rather, this evidence relates to Philbrick's qualifications or the hiring process. This *is* qualifications evidence, repurposed by plaintiff as evidence of discrimination. In other words, plaintiff attempts to use qualifications evidence in two ways:

both as evidence of her qualifications, and as evidence of discrimination. Our case law requires more.

Specifically, we require "*other*" evidence of discrimination, beyond evidence merely probative of plaintiff's qualifications or the process of hiring. For example, in *Risch v. Royal Oak Police Department*, 581 F.3d 383, 392–93 (6th Cir. 2009), this court found pretext where the female plaintiff was roughly as qualified as the ultimately-promoted male candidate *and* where the plaintiff's coworkers made statements related to her gender. Similarly, in *Bartlett v. Gates*, 421 F. App'x 485, 491–92 (6th Cir. 2010), the plaintiff presented evidence that he was as qualified as the selected candidate, and that his superiors had made discriminatory remarks. In *Bartlett*, we concluded that the discriminatory remarks, when combined with the plaintiff's qualifications evidence, were enough to survive summary judgment. *Id*. In contrast, Philbrick cites no authority in which this court has repackaged qualifications evidence and deemed it sufficient as "other probative evidence of discrimination."

In my view, this record is devoid of "other evidence of discrimination" similar to those found in other cases. In this regard, plaintiff points to no discriminatory remarks from her supervisors or coworkers regarding her sex. Nor is there any other additional evidence of discrimination from which a factfinder could infer that Robinson was selected because of an impermissible bias against plaintiff based on her sex. The inference of sex discrimination that Philbrick claims lacks any evidentiary support and, in my view, is based solely on speculation and conjecture.

In conclusion, on this record, there is insufficient direct or circumstantial evidence from which a reasonable jury could conclude that the presenter, career board, or director intentionally

discriminated against Susan Philbrick because of her sex. As the Supreme Court has held, the "ultimate question" in employment discrimination cases is whether the plaintiff was the "victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 153 (2000). Plaintiff failed to present sufficient evidence to answer that question in the affirmative. In this case, which the majority concedes is a "close call," my colleagues have assumed the role of a super personnel committee by second-guessing a legitimate personnel decision of the Marshals Service. For these reasons, I respectfully dissent regarding plaintiff's sex discrimination claim.

II.

I also dissent from the majority's conclusion regarding plaintiff's 2011 Title VII retaliation claim.

> The elements of a retaliation claim are similar but distinct from those of a discrimination claim. To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quotation marks omitted). "Title VII retaliation claims 'must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id*. at 731 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2014)).

I agree with the majority that the dispositive issue is causation. The parties and the majority make much of the "temporal proximity" aspect of causation, discussing whether the five weeks—or six months, depending on where the line is drawn—between the EEOC action and the

hiring decision was sufficient to establish causation. In my judgment, this line of reasoning is immaterial because plaintiff cannot establish causation.

To prove causation, plaintiff must demonstrate that but for her EEOC complaint, she would have been promoted instead of the ultimately successful candidate. Assuming arguendo plaintiff's position that the career board and director would have rubber-stamped whichever candidate Marshal Grubbs ranked first among applicants, Philbrick must still show that she should have been ranked first but for her EEOC complaint. She does not do so. Plaintiff makes much of the fact that she was initially ranked third behind the less-qualified Candidate 85 and that Grubbs subsequently revised his rankings, placing plaintiff second. But it does not follow from the fact that Grubbs revised his rankings making plaintiff second that he would have ranked her first but for her EEOC complaint. Accordingly, the fact that Grubbs revised his rankings does nothing to answer whether plaintiff would have been promoted but for her EEOC complaint. Indeed, plaintiff was *never* ranked first. Nor does plaintiff argue that she *should* have been ranked first—although she argues that she was "overwhelmingly superior[]" to Candidate 85, she never appears to dispute that Jankowski was a qualified candidate for the job.1 Instead, she requests that we do her work for her, suggesting that Grubbs' revision in rankings was indicative of some wrongdoing in a vague sense, leaving it to us to fill in the blanks with a finding of illegal discrimination. But it is plaintiff's burden to establish that her protected activity was the but-for cause of the adverse employment action against her, and absent evidence or a reasonable inference

---

1For example, plaintiff argues that "[t]he question not addressed by the District Court which the jury was prevented from answering, is why would Grubbs . . . rank Candidate 85 . . . above [plaintiff ?]" This illustrates perfectly plaintiff's and the majority's specious reasoning. Where plaintiff ranked relative to Candidate 85 is immaterial. What matters for purposes of establishing but-for causation is where plaintiff ranked relative to Jankowski, the top-ranked candidate.

that she would have been ranked first except for her EEOC complaint, I cannot conclude that plaintiff has met that burden.

III.

For these reasons, I respectfully concur in part and dissent in part.   I would affirm the judgment of the district court.