RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0267p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

VULENZO L. BLOUNT, JR.,

*Plaintiff-Appellant*,

*v.*

No. 22-5356

STANLEY ENGINEERING FASTENING, a division of
Stanley Black & Decker, Inc.,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court for the Western District of Kentucky at Paducah.
No. 5:19-cv-00109—Benjamin J. Beaton, District Judge.

Decided and Filed:  December 15, 2022

Before:  SILER, GILMAN, and NALBANDIAN, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:**  Nancy Oliver Roberts, ROBERTS LAW, Bowling Green, Kentucky, for Appellant.  Richard G. Griffith, Allison C. Cooke, STOLL KEENON OGDEN PLLC, Lexington, Kentucky, for Appellee.

───────────────

**OPINION**

───────────────

RONALD LEE GILMAN, Circuit Judge.  Vulenzo Blount, Jr. was fired from his job at Stanley Engineering Fastening (Stanley) in August 2018 for using his cell phone while sitting in the operator's seat of his idling forklift, in violation of Stanley's safety policies and the terms of a "last-chance agreement" that Blount had signed less than a year before his discharge.  Blount,

who is black, sued Stanley for race discrimination and retaliation under the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.040.

Blount denied that he had violated his last-chance agreement and alleged that Stanley did not terminate the employment of several white employees who had engaged in similar or worse conduct. He also alleged that he was fired in retaliation for filing an EEOC complaint three years earlier. The district court granted summary judgment in favor of Stanley. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Stanley is a parts-manufacturing division of Stanley Black & Decker, Inc., a major tool company. Blount worked for Stanley for 21 years, most recently as a forklift operator in Stanley's Hopkinsville, Kentucky plant. Due to the dangerous nature of Stanley's industrial operations, it maintains extensive safety policies, including a prohibition on using cell phones while working on the plant floor.

According to Stanley, Blount had previously been warned multiple times against using his phone on the plant floor by the plant's director. Then, on January 31, 2018, Stanley employee Bonnie Taylor, who worked in the same area as Blount, filed a report alleging that Blount was driving a forklift toward her with "neither of his hands on the wheel" because he was manipulating his smartwatch. Taylor went on to claim that she witnessed Blount using his smartwatch on a forklift again a few minutes later. This time the forklift was stationary, but still running.

Stanley initiated an investigation. When asked about the incident, Blount denied any wrongdoing, but offered no explanation for his conduct. Stanley's investigation credited Taylor's account and determined that the incident occurred as she had reported.

Given the serious safety risks posed by using a smartwatch while operating a forklift, Stanley took steps to terminate Blount immediately. Blount's union interceded, however, and proposed that he be placed under a last-chance agreement, which provided that any additional

safety violations within two years would result in Blount's immediate termination. Stanley and Blount both agreed, and they signed a last-chance agreement to that effect on February 7, 2018.

Less than seven months later, on August 28, 2018, Taylor reported that she saw Blount using his cell phone in his lap while sitting on an idling forklift. Blount again denied the conduct. But Stanley, after an investigation, concluded that Blount had violated his last-chance agreement and fired him the next day. Blount's union initially filed a grievance on his behalf, but withdrew the grievance after the union was unable to corroborate Blount's version of events when he refused to provide his phone records.

As a totally separate matter, Blount had filed an EEOC complaint in July 2015 (more than three years before he was fired), against Stanley for not promoting him. The EEOC dismissed the complaint in April 2016 because it was "unable to conclude that the information obtained establishes violations of the statutes."

Blount filed this lawsuit in August 2019. He brought two claims against Stanley: first, that he was fired because of his race, and second, that he was fired in retaliation for his 2015 EEOC complaint, both in violation of the Kentucky Civil Rights Act. After a lengthy and contentious discovery process in the district court, both Blount and Stanley moved for summary judgment. The court found that none of Blount's proffered comparators "were similar in the legally relevant ways," and that he therefore could "not make out the necessary prima facie showing" of racial discrimination. The court further found that "Stanley offered a legitimate non-discriminatory reason—serious safety violations—for firing Blount," and that he could not "prove this justification was pretext for intentional discrimination."

With respect to Blount's retaliation claim, the district court found not only that "Stanley had a legitimate non-retaliatory reason for terminating Blount," but also that "no evidence connects Blount's protected conduct and his eventual termination." The court accordingly granted Stanley's motion for summary judgement and denied Blount's. In the same opinion and order, the court excluded two post-deposition affidavits filed by Blount and granted Stanley's motion to strike the proffered "expert" testimony of Blount's wife, Desma Blount. Blount has timely appealed.

## II.  ANALYSIS

### A.     Standard of review

We review the district court's grant of summary judgment de novo, applying the same standards as the district court.  *Jordan v. Howard*, 987 F.3d 537, 542 (6th Cir. 2021).  Summary judgment is proper if there are no genuine disputes of material fact and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.     Racial discrimination

The Kentucky Civil Rights Act prohibits, as "an unlawful practice," the "discharge [of] any individual . . . because of the individual's race."  Ky. Rev. Stat. § 344.040(1)(a).  This language is "virtually identical" to the relevant portion of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).  *Jefferson County v. Zaring*, 91 S.W.3d 583, 586 (Ky. 2002) (citation omitted).  As a result, courts faced with racial-discrimination claims under the Kentucky Civil Rights Act follow the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Turner v. Marathon Petroleum Co.*, 804 F. App'x 375, 377 (6th Cir. 2020); *Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky. 2016).  In the absence of direct evidence of discrimination, an employee must first establish a prima facie case by showing that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees."  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)).

If the employee successfully makes out a prima facie case, then the burden shifts to the employer to offer a "legitimate, nondiscriminatory" reason for its actions.  *White v. Duke Energy-Ky., Inc.*, 603 F. App'x 442, 446 (6th Cir. 2015) (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).  In that event, the burden shifts back to the employee to "produce sufficient evidence from which a jury could reasonably reject [the employer's]

explanation of why it fired" the employee and conclude that the proffered reason was merely a pretext for the true discriminatory motive. *Miles v. S. Cent. Hum. Res. Agency*, 946 F.3d 883, 888 (6th Cir. 2020) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Employees typically try to establish pretext "in one of three ways: (1) by showing that the employer's articulated reason had no basis in fact; (2) by showing that the reason would have been insufficient to motivate the employer's action; or (3) by showing that the reason did not actually motivate that action." *Turner*, 804 F. App'x at 378 (citations and internal quotation marks omitted).

Stanley does not dispute that Blount has satisfied the first three elements of his prima facie case: Blount is black, he was employed at Stanley for 21 years, and he was ultimately fired from his job. Blount attempts to establish the final element of his prima facie case—differential treatment—by comparing his situation to that of the following six white employees:

1. **Scottie Brumfield.** Brumfield was suspended for three weeks and given a last-chance agreement for looking at "inappropriate material" on a company computer. He did not violate his last-chance agreement, and his employment was not terminated.

2. **Chris Long.** Long entered into a last-chance agreement for leaving demeaning notes for a coworker and was required to attend anger-management classes. He did not violate his last-chance agreement, and his employment was not terminated. Blount also claims that Long was "caught on his phone" on the plant floor, but offers no evidence to support this contention. Stanley was unaware of any such incident.

3. **Brian Blake.** Blake received an oral warning after he drove through a newly installed red light on the plant floor. After stopping to allow others to pass through the intersection, Blake proceeded through, unaware of the new light, which had replaced a stop sign. Blake was not disciplined because no one had been trained on the new light system yet, so Stanley was not issuing written discipline to any employees for issues related to red lights at the time. Blount also claims that Blake was a drug user, but offers no evidence that this is true or that Stanley was aware of it.

4. **David Noel**. Noel received a written warning after he was observed using his phone while seated next to a large, enclosed machine that he had been operating. He then received a second warning for failing to tuck in his shirt around dangerous machinery. Noel also received several warnings for unexcused absences, culminating in a last-chance agreement. Stanley terminated Noel for his attendance infractions, but the union was able

to secure his reinstatement. Blount also claims that Noel was a drug user, but offers no evidence that this is true or that Stanley was aware of it.

5. **Tim Nosbusch.** Nosbusch received two last-chance agreements. The first was issued after he made a rude comment to a coworker. The second was for failing to latch his safety lanyard while operating a fixed lift above ground level. Blount claims that Nosbusch failed to use his lanyard another time, but no evidence suggests that Stanley knew about this incident. Nosbusch did not violate either of his last-chance agreements, and his employment was not terminated.

6. **Breck Cavanaugh.** Blount claims that Cavanaugh "was on his cell phone" when he had "six wrecks" on a forklift, but offers no evidence to support this contention beyond Cavanaugh's testimony that he was drug tested five or six times while at Stanley (drug testing can follow an accident). Cavanaugh's personnel file reflects that he was placed on a one-year probation and issued a final written warning after he backed into a wall on a forklift. Cavanaugh did not violate the terms of his probation, and his employment was not terminated. Blount also claims that he observed Cavanaugh showing Bonnie Taylor something on his phone while seated on a forklift, but Stanley was unaware of any such incident.

In addition to these six proffered comparators, Blount asserts without elaboration or evidentiary support that "20 other white" Stanley employees "were not terminated for cell-phone use."

To be considered similarly situated, a comparator need not be identical, but should be similarly situated "in all *relevant* respects." *Wright,* 455 F.3d at 710 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)) (emphasis in original). "Superficial similarities between a disciplined employee and his colleagues" are not enough to make them comparators. *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) (citing *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Particularly relevant to this case is whether the proffered comparator and the plaintiff "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich*, 154 F.3d at 352 (citation and internal quotation marks omitted). In order to be considered similarly situated,

employees must have "engaged in acts of '*comparable seriousness*.'" *Wright*, 455 F.3d at 710 (quoting *Clayton v. Meijer, Inc*., 281 F.3d 605, 611 (6th Cir. 2002) (emphasis in original)). The fact that two employees both received a warning or a negative performance review, for example, is not enough to make those employees similarly situated; instead, the reviews must concern similar work issues. *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 458–59 (6th Cir. 2010). Ultimately, the court must "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich*, 154 F.3d at 352.

There are significant differences between Blount and each of his proffered comparators, and the district court correctly concluded that none of them is similarly situated to Blount. The last-chance agreements signed by both Brumfield and Long raised no workplace-safety concerns, whereas Blount's infractions posed a significant risk of injury or damage. *See Wright*, 455 F.3d at 710–11 (holding that sexual harassment is more serious than admitting an unauthorized person into the workplace and spreading rumors because the harassment "caused actual serious harm to . . . people"); *Clayton,* 281 F.3d at 611–12 (holding that the plaintiff and other employees were not similarly situated despite engaging in the same conduct because the plaintiff caused serious injury and the other employees did not). The same is true for Noel's attendance issues. *See Mitchell v. Toledo Hosp*., 964 F.2d 577, 580, 583 (6th Cir. 1992) (concluding that a comparator with alleged attendance problems was not similarly situated to the plaintiff, who was terminated for hiding company files and lying about it).

Although Blake, Noel, Nosbusch, and Cavanaugh were all involved in incidents that raised safety concerns, none rose to the level of the danger to others posed by using a cell phone or smartwatch while operating a forklift. Blake ran a newly installed red light on a single occasion, but only after stopping to let others pass, and he did not repeat the same mistake after being warned. *See Colvin*, 390 F. App'x at 458–59 (holding that two employees were not similarly situated when one had committed additional, serious errors that the other had not). Noel used his phone while operating a machine, but Noel's machine was enclosed and posed no threat to anyone except himself. Likewise, had Noel's untucked shirt become tangled in the machinery, no one else would have been injured. That renders Noel's safety threat less serious

than Blount's, which posed a risk to others nearby. *See Turner*, 804 F. App'x at 378–79 (holding that a comparator whose safety violation posed a risk only to himself was not similarly situated to a plaintiff whose conduct posed a risk to others); *see also Clayton*, 281 F.3d at 610–12 (holding that three white employees who committed the same safety error as the black plaintiff were not similarly situated because the plaintiff's error caused serious harm to a coworker).

The same situation applies to Nosbusch, who placed only himself at risk by failing to attach his safety lanyard when operating a fixed lift above ground. Nor does the fact that Nosbusch had two separate last-chance agreements render his circumstance more serious. As the district court aptly observed, "Nosbusch's agreements concerned fundamentally different conduct, so it makes sense that the first agreement, regarding interpersonal issues, didn't speak to the issues covered by the second agreement, which addressed safety violations."

Cavanaugh, whom the district court deemed Blount's "closest comparator," was involved in a single accident. Even considering this accident to be at least as serious as Blount's infractions, Cavanaugh did not have a repeat infraction after being warned and placed on probation. *See Mazur v. Wal-Mart Stores, Inc.*, 250 F. App'x 120, 127 (6th Cir. 2007) (holding that two employees who committed the same violation were not similarly situated because one violated the terms of his probation and the other was not on probation); *Campbell v. Hamilton County*, 23 F. App'x 318, 326 (6th Cir. 2001) (concluding that an employee who had no previous, related warnings was not similarly situated to a plaintiff who committed additional policy violations several weeks after being disciplined).

The most important distinction between Blount and all of his proposed comparators is the lack of evidence that any Stanley employee remained employed after violating a last-chance agreement. Brumfield, Long, Blake, Nosbusch, and Cavanaugh were all issued last-chance agreements or placed on probation, but no evidence shows that any of them violated those agreements without being terminated. Noel, by contrast, *was* terminated when he violated his last-chance agreement related to attendance, even though his union was later able to secure his reinstatement. Nor is there any evidence that Stanley was aware that any other employee used a mobile device while operating a forklift.

Finally, throughout his briefing and in his filings in the district court, Blount levels various accusations against many of his proffered comparators, asserting that they committed numerous safety violations or used drugs while working for Stanley. But most of these accusations are not based on Blount's personal knowledge, and such uncorroborated assertions are insufficient to sustain his burden of proof at the summary-judgment phase of the case. *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990))). In any event, Blount adduced no evidence that Stanley knew about any of these alleged additional violations. Blount is ultimately unable to establish a prima facie case of racial discrimination because none of his proffered comparators are similarly situated.

And even if Blount had established his prima facie case, he is unable to rebut Stanley's nondiscriminatory explanation for his firing; namely, his serious safety infraction in violation of his last-chance agreement. Blount contends that this reason has no basis in fact because he was not using his cell phone on his idling forklift and because Taylor "could not hear the electric orange forklift because it makes no noise even if running." Blount's phone records, however, corroborate both of Taylor's reports.

Taylor's first incident report in January 2018 states that she witnessed Blount manipulating his smartwatch at "approximately 2:35 pm," and the phone records indicate that he received at least five text messages between 2:30 p.m. and 2:32 p.m. Blount concedes that these messages would have caused his smartwatch to vibrate. Taylor's first report also notes that she saw Blount on his smartwatch a few minutes later. The phone records are consistent here as well.

The same is true for the second incident report in August 2018. Taylor stated that she observed Blount using his phone between 12:30 p.m. and 1:00 p.m. During this time period, Blount received a text and sent at least two messages. More generally, Blount's phone records reflect numerous incoming and outgoing texts and calls during the workday, and Blount admitted sending "a lot" of texts during business hours at Stanley.

Stanley's explanation for why it fired Blount is thus well-grounded in fact, and, in any event, at the pretext stage Blount "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason." *See Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (quoting *Smith v. Chrysler*, 155 F.3d 799, 806–07 (6th Cir. 1998). Blount puts forward no such evidence.

Finally, in an apparent attempt to provide direct evidence of a discriminatory animus, Blount questions the motives that Taylor might have had for reporting him. He claims that Taylor's black coworker, Sherliee Johnson, "was not Bonnie's friend." Blount also suggests that Taylor might have had improper motives because she received a raise nearly a year after she reported Blount. But Blount offers no evidentiary support for either of these contentions. And even if they were true, neither would suggest that Stanley fired Blount because of his race.

**C.     Retaliation**

Blount, with little support or elaboration, also asserts that he was terminated in retaliation for an EEOC complaint that he filed in July 2015, more than three years before he was fired. Blount's EEOC complaint concerned his application for promotions to quality-engineer and third-shift-supervisor positions, which he claimed were denied because of his race. The precise nature of Blount's retaliation claim is unclear, but he appears to argue that he was terminated in 2018 because he helped the EEOC investigate his complaint in 2016, after the EEOC had dismissed it. Blount does not specify what kind of investigatory assistance he allegedly provided.

Retaliation claims under the KCRA are analyzed using a burden-shifting framework similar to that used to assess discrimination claims. A plaintiff must first make out a prima facie case that (1) he was engaged in a protected activity, (2) the defendant knew this, (3) the defendant took an adverse employment action against the plaintiff after the protected conduct, and (4) there was a causal connection between the protected conduct and an adverse employment action taken by the defendant. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014); *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004). The burden then shifts to the defendant to offer legitimate nonretaliatory reasons for its actions. *Montell*, 757 F.3d at 504. To overcome a proffered nonretaliatory justification, the

plaintiff must then "put forward competent evidence from which a reasonable jury could conclude that the stated reason is merely pretextual." *Id.*

Blount's retaliation claim fails for at least two independent reasons. First, Stanley had a legitimate nonretaliatory reason for terminating Blount that he cannot show was pretextual. Blount's infractions raised legitimate safety concerns, and he was fired after violating his last-chance agreement. No one involved in firing Blount, moreover, worked for Stanley when he filed his EEOC complaint or when the EEOC dismissed it, and no evidence suggests that they were aware of the complaint at the time of Blount's discharge.

Second, no evidence connects Blount's protected conduct to his eventual termination. Although a plaintiff "is not required to demonstrate that the sole or even the primary reason for the termination was related to the protected activity," Blount must show that it "was a substantial and motivating factor in the decision to terminate." *See Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 453 (6th Cir. 2017) (citation and internal quotation marks omitted). This typically "requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action." *Id.* (quoting *Brooks*, 132 S.W.3d at 804). Over three years separate Blount's termination in August 2018 from his EEOC complaint, which was filed in July 2015 and dismissed in April 2016.

The lack of temporal proximity in this case greatly diminishes the probability that Blount's termination was caused by his protected activity. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). And again, Blount has not shown that anyone involved in his discharge was even aware of the EEOC complaint at the time Blount was fired, much less motivated by it.

**D.    Evidentiary rulings and discovery**

Apart from the merits of summary judgment, Blount argues that the district court abused its discretion by striking certain affidavits and ruling against Blount on several discovery matters. Blount first contends that the court abused its discretion by excluding two of his own affidavits filed in support of his motion for summary judgment. He argues, without elaboration, that the

court's decision violated his due process rights under the Kentucky Constitution and under the Fifth and Fourteenth Amendments to the U.S. Constitution.

"'We review a district court's discovery-related rulings under the highly deferential abuse-of-discretion standard.' This includes our review of a district court ruling on a motion to strike an affidavit." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (quoting *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014), and citing *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006)). "A district court abuses its discretion when it 'relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.'" *Id.* (quoting *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006)).

We find no abuse of discretion in excluding either of Blount's affidavits. The first affidavit was not a proper declaration under 28 U.S.C. § 1746 because it was unsworn and filed with Blount's electronic signature rather than his personal signature. *See Sfakianos v. Shelby Cnty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012) (upholding the district court's exclusion of an unsigned, unattested summary-judgment affidavit because it did not comply with 28 U.S.C. § 1746). And the second affidavit, like the first, contains extensive hearsay and testimony about which Blount had no personal knowledge, as well as testimony that contradicts Blount's earlier deposition. For these reasons, the district court did not abuse its discretion in excluding either affidavit. *See France v. Lucas*, 836 F.3d 612, 622–24 (6th Cir. 2016) (holding that an affidavit that "directly contradicts prior sworn testimony . . . should be stricken 'unless the party opposing summary judgment provides a persuasive justification for the contradiction'" (quoting *Aerel*, 448 F.3d at 906)); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) ("[H]earsay . . . may not be considered on a motion for summary judgment."); *Sperle v. Mich. Dep't of Corrs.*, 297 F.3d 483, 495–96 (6th Cir. 2002) (holding that an "affidavit [that] is not based upon personal knowledge" was "insufficient to create a genuine issue of material fact") (citing *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000)); *see also* Fed. R. Civ. P. 56(c)(4) (requiring that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

Blount also argues that the district court improperly struck an "expert opinion report" by his wife, Desma Blount, purporting to show that Blount suffered emotional-distress damages. Ms. Blount is a former school counselor, and Blount argues that her experience and "diplomatic ability to counsel parents, staff, teachers, administrators, and community individuals" qualify her as an expert.

We review a district court decision to exclude expert testimony using the abuse-of-discretion standard. *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 781 (6th Cir. 2002). In order for a witness to be qualified to give expert testimony under Rule 702 of the Federal Rules of Evidence, (1) the witness must be qualified by "knowledge, skill, experience, training, or education"; (2) the testimony must be "relevant," meaning that it will assist "the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the testimony must be reliable, as assessed by its factual basis and the sufficiency of its methods. *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208 (6th Cir. 2015) (citation and internal quotation marks omitted); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).

The district court did not abuse its discretion in excluding Ms. Blount's report. She is not a licensed counselor, has counseled only children, and has not counseled at all for at least 20 years. This experience, or lack thereof, does not qualify her as an expert in emotional-distress damages. Nor did Ms. Blount use reliable scientific methods to develop her report. As the district court pointed out, her purported treatment and/or diagnosis of her husband consists mainly of unsubstantiated personal observations and likely violated ethical standards for counselors. Moreover, even if the court did abuse its discretion on this question, any error was harmless because the question of whether Blount suffered emotional distress is irrelevant to the merits of his employment-discrimination and retaliation claims.

Blount next argues that the district court "abused its discretion by not allowing [eight] entire depositions to be filed in the record, only excerpts." But the court did "allow the filing of the entire transcripts," even if it "only consider[ed] the portions Blount cited, consistent with Rule 56(c)."

Finally, Blount levels a bevy of complaints about other discovery issues, arguing that the district court "abused its discretion by not allowing equal or fair discovery." For example, Blount argues that the "[d]istrict court declined to compel production of the cell phone records of other employees, but ordered Blount to turn over his own phone records;" that he was improperly not allowed to take the depositions of Jeff Allen, Kent Shane, Adam Perry, Sherliee Johnson, and Theodore Morris; and that "the court did not require [Stanley] to complete their Interrogatory Answers by producing all the personnel files as repeatedly requested."

The district court's opinion lays out in great detail the contentious discovery disputes that characterized this case, and we perceive no abuse of discretion in any of Blount's discovery-related complaints on appeal. To the extent that Blount argues his inability to conduct discovery that he needed in order to oppose Stanley's motion for summary judgment, Blount did not properly request additional discovery through an "affidavit or declaration" explaining why he could not "present facts essential to justify its opposition." *See* Fed. R. Civ. P 56(d). The failure to file such an affidavit is alone sufficient to deny Blount's discovery requests. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) ("[B]efore a summary judgment motion is decided, the non-movant must file an affidavit pursuant to Fed R. Civ. P. 56(f) that details the discovery needed, or file a motion for additional discovery. If he does neither, 'this court will not normally address whether there was adequate time for discovery.'") (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995)).

Blount, moreover, did not object to any of the magistrate judge's discovery orders. He therefore waived the right to complain about them on appeal. *See Bd. of Trustees v. Moore*, 800 F.3d 214, 223 (6th Cir. 2015) (holding that parties who do not timely object to a discovery order entered by a magistrate judge waive appellate review). Indeed, when he asserted these same discovery complaints in the district court, Blount did so by way of a motion to set aside under Rule 59 of the Federal Rules of Civil Procedure, which applies only to judgments, not to interlocutory orders like the discovery orders that Blount is challenging. *See Loomis v. Chrysler Corp.*, 4 F. App'x 214, 215 (6th Cir. 2001) (upholding a district court's denial of a Rule 59(e) motion to alter or amend a judgment because no final judgment had been entered). Not only that, but Blount's motion did not address the factors under which courts assess motions to set

aside. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). The district court, therefore, did not abuse its discretion in denying Blount's discovery requests.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.