NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0033n.06

Case No. 25-1623

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LAQUINTA HIGHTOWER-MATHIS, | ) | |
| Plaintiff - Appellant, | ) ) | **FILED**<br>Jan 16, 2026<br>KELLY L. STEPHENS, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| NEXTCARE MICHIGAN PROVIDERS, | ) | EASTERN DISTRICT OF MICHIGAN |
| PLLC, | ) | |
| Defendant - Appellee. | ) | OPINION |
| | ) | |

Before: CLAY, BATCHELDER, and RITZ, Circuit Judges.

**RITZ, Circuit Judge**. NextCare Michigan Providers, an urgent care clinic, fired front-desk employee Laquinta Hightower-Mathis after she made unprofessional comments to a police officer seeking treatment at the clinic. Hightower-Mathis sued, claiming that NextCare discriminated against her based on race and gender and subjected her to a hostile work environment. NextCare moved for summary judgment, which the district court granted. Hightower-Mathis appeals.

Hightower-Mathis cannot establish a prima facie discrimination case under federal or state law. Nor can she show that NextCare harassed her based on her race or gender. Because no reasonable jury could find for Hightower-Mathis on any of her claims, we affirm the district court's grant of summary judgment.

**BACKGROUND**

**I.     Facts**

Laquinta Hightower-Mathis, an African-American woman, worked as a patient service specialist at the NextCare clinic in Grosse Pointe Woods, Michigan.[1]  She was responsible for sitting at the clinic's front desk and "[r]egist[ering] . . . patients" for treatment "in a manner that communicate[d] to the patient that their well-being [was] the primary mission of NextCare."  RE 21-3, Admin. Policies, PageID 296.  Hightower-Mathis claims in her brief, without factual support, that she received praise and awards for her professionalism in that role.  But on two occasions, NextCare documented performance concerns to her in writing and issued verbal performance-improvement plans.[2]

On July 5, 2022, Hightower-Mathis and her colleague Brittany Caver were working at the clinic's front desk when Grosse Pointe Woods police officer Duncan Gill arrived for medical treatment.  As Caver registered Gill, Hightower-Mathis began to make "small talk" with him.  RE 21-2, Hightower-Mathis Dep., PageID 279.  She asked Gill how long he had been on the police force and asked him if he "ever killed anyone."  *Id.*  Gill responded that he had not, to which Hightower-Mathis replied, "that's good.  We need more officers like you."  *Id.*  Gill then sat down

---

[1]     The district court's practice guidelines and scheduling order required defendant to submit a statement of undisputed material facts with its summary judgment motion.  The guidelines and order required the non-moving party, in return, to file a counter-statement of disputed facts. Hightower-Mathis failed to respond to NextCare's statement of material facts, despite being granted additional time to file her response brief.  For this reason, both parties, the district court, and this opinion rely exclusively on defendant's record exhibits.

[2]     Hightower-Mathis claims that her "performance was consistently praised by patients, and she received multiple customer service awards for her professionalism."  CA6 R.15, Appellant Br., at 12.  Her only substantiation for those claims is citation to her own previous, unsubstantiated comments about those commendations in her original complaint and response to NextCare's summary judgment motion.  *Id.*  Hightower-Mathis does not mention the performance concerns or improvement plans NextCare issued to her.

in the clinic lobby. He texted his supervisor, Sergeant Mark Agnetti, and told him that employees at the clinic made "rude comments to him in regard[] to why he [was] wearing his police uniform" and "asked him how many people he killed tonight." RE 21-9, Case Report, PageID 319. Gill also told Agnetti that he was hesitant to turn over personal information to them.

Agnetti arrived at the clinic about fifteen minutes later. Agnetti claims that when he arrived, Hightower-Mathis "without hesitation" asked him "how many people [he] was going to beat up tonight." RE 21-9, Case Report, PageID 319; RE 21-10, Agnetti Decl., PageID 324. Agnetti asked for Hightower-Mathis's name; she refused to give it to him at first but later provided it. He also asked to speak with her supervisor. According to Agnetti, Hightower-Mathis sarcastically responded that Agnetti "was her supervisor." *Id.* at PageID 319. He asked again for Hightower-Mathis's supervisor, and she provided him the business card of Jacqueline Kenyon, the clinic manager. Once out of Hightower-Mathis's earshot, Agnetti called Kenyon and explained the situation. Kenyon apologized and promised to handle the incident "swiftly." *Id.* at PageID 320; RE 21-10, Agnetti Decl., PageID 324.

Hightower-Mathis disputes Agnetti's narrative. She believed the sergeant "was just getting a [tuberculosis] test" at the clinic. RE 21-2, Hightower-Mathis Dep., PageID 280. When Agnetti asked Gill if he was okay, she interjected, "he's okay, we're not bothering him." *Id.* Hightower-Mathis maintains that she "absolutely did not" ask the Sergeant "how many people [he] was going to beat up." *Id.* at PageID 280-81.

Following the incident, Hightower-Mathis texted Kenyon, "[t]he Sgt wanna talk to you he is a grumpy old man I was joking with his police officer and he got in his feelings." RE 21-13, Pl.'s Text Message, PageID 332. She asked if she could leave work early because she didn't want Agnetti "running [her] [expired vehicle tags] while he [is] here and he is mad." *Id.* Kenyon called

NextCare's regional vice president, Scott Walter, to tell him about the incident, and Walter recommended she suspend Hightower-Mathis pending further investigation. Kenyon then called Hightower-Mathis, heard her side of the story, and informed her that she was "suspended until the investigation was completed." RE 21-11, Kenyon Stmt., PageID 326. Finally, Kenyon contacted Caver and asked her to provide a statement describing the situation.

Grosse Pointe Woods Chief of Police John Kosanke called Kenyon the next morning. Kosanke was "very upset." RE 21-11, Kenyon Stmt., PageID 326. He asked to speak to Kenyon's supervisor, explained that the police department would likely sever its contract with NextCare because of the incident, and asked her to fire Hightower-Mathis. Kenyon connected Kosanke with Walter. Kenyon, Walter, and Human Resources staffer Juanita Hennigan then together decided to fire Hightower-Mathis. They issued Hightower-Mathis a termination notice that day. Hennigan explained that NextCare "obtained . . . witness statements, called [Hightower-Mathis] to ask her what happened, and then . . .terminated her for conduct" because "the police officer was offended, and [NextCare] lost [its] contract" with the police department. RE 21-15, Hennigan Dep., PageID 340-41. Hennigan had never met Hightower-Mathis at the time of the incident and did not know her race.[3]

In her deposition, Hightower-Mathis acknowledged that she had no information about what the officers told NextCare or what NextCare did to investigate the incident. Hightower-Mathis is unaware of any patient service specialists who were fired for inappropriate remarks to a patient, or if NextCare declined to fire other patient service specialists for "more serious conduct." RE 21-2, Hightower-Mathis Dep., PageID 290. She claims that a white woman at another NextCare facility

---

[3] The record does not reveal whether Walter had ever met Hightower-Mathis or if he knew she was African-American.

was suspected of stealing money from the clinic, but she does not know that woman's name, her position at the facility, or if NextCare fired her. Hightower-Mathis also claims that an African-American woman who "went off on . . . patients" was only employed at NextCare for a short period, but she does not remember the woman's name or know if she got fired or quit. *Id.* Hightower-Mathis has no knowledge of who, if anyone, replaced her in the patient service specialist role.

Hightower-Mathis "[does not] believe that [NextCare] harassed [her] because of [her] race," but "because of what the police officer said." *Id.* at PageID 292. She also never complained to NextCare about harassment. She also does not believe that NextCare "firing [her] had anything to do with [her] gender." *Id.* at PageID 291. Hightower-Mathis recalls receiving NextCare's harassment and employee-conduct policies, which require employees to "conduct themselves in a professional manner at all times," but she did not read the policies. RE 21-2, Hightower-Mathis Dep., PageID 277. Hightower-Mathis's legal claims rest on her belief that NextCare took the white police officer's side of the story and ignored her own because of their respective races.

## II.     Procedural history

Hightower-Mathis sued NextCare in federal court. She claimed NextCare harassed and discriminated against her based on her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), Michigan Compiled Laws § 37.2701; and discriminated against her on the basis of race under the Civil Rights Act of 1866, 42 U.S.C. § 1981. After discovery, NextCare moved for summary judgment.

The district court granted NextCare's motion and dismissed Hightower-Mathis's claims with prejudice. The court found that Hightower-Mathis failed to establish a prima facie case of

race discrimination under Title VII, § 1981, or ELCRA. And the court dismissed her race and gender harassment claims because Hightower-Mathis admitted that she did not believe NextCare fired or harassed her because of her race or gender.

Hightower-Mathis appealed. She argues that the district court "misapplied the governing legal standards, resolved credibility disputes against the nonmovant, and disregarded material evidence supporting [a]ppellant's claims." CA6 R. 15, Appellant Br., at 16.

## ANALYSIS

### I.      Standard of review

We review a district court's grant of summary judgment de novo. *El-Khalil v. Oakwood Healthcare, Inc.*, 23 F.4th 633, 634 (6th Cir. 2022). "Summary judgment is proper if there are no genuine disputes of material fact and the moving party 'is entitled to judgment as a matter of law.'" *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 509-10 (6th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party may show that there are no genuine disputes of material fact by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must then provide "significantly probative" evidence to support its position. *Anderson*, 477 U.S. at 249-50.

### II.      Hightower-Mathis's race discrimination claims

Hightower-Mathis argues that the district court erred in granting summary judgment on her race discrimination claims because it "demanded strict comparator proof at the prima facie stage" and "improperly weigh[ed] credibility and resolv[ed] factual disputes against [her]." CA6 R. 15,

Appellant Br., at 19. Hightower-Mathis also argues that the court misapplied this circuit's standard for determining if an adverse employment action is pretextual.

### A. Prima facie case

"To establish a Title VII violation, a plaintiff may rely on direct or circumstantial evidence." *Bates v. Am. Axle and Mfg., Inc.*, No. 18-2260, 2019 WL 4941946, at *2 (6th Cir. Sep. 17, 2019). Absent direct evidence of racial discrimination, a plaintiff can establish discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802). Under this test, plaintiff carries the initial burden of establishing a prima facie discrimination case. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (citing *McDonnell Douglas*, 411 U.S. at 802). A plaintiff must show that they (1) are "a member of a protected class," (2) were "qualified for the job and performed it satisfactorily," (3) "suffered an adverse employment action" despite their "qualifications and performance," and (4) were "replaced by a person outside the protected class or [were] treated less favorably than a similarly situated individual outside of [their] protected class." *Id.* The analytical framework for race discrimination claims under § 1981 and ELCRA mirrors the Title VII standard. *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).

Here, the parties dispute the fourth *McDonnell Douglas* requirement. Hightower-Mathis argues that she presented sufficient circumstantial evidence to make out a prima facie case of racial discrimination because "she was terminated immediately after an encounter with police officers in which she denies making the inflammatory remarks attributed to her," because a coworker's statement did not corroborate all the officers' accusations, and because she was "not afforded a fair investigation." CA6 R. 15, Appellant Br., at 19. By dismissing her comparator evidence as "scant

and incomplete," she contends, the district court collapsed the fourth *McDonnell Douglas* element into a "comparator-only test." *Id.* at 19-20 (quoting RE 28, Op. & Order, PageID 446).

Hightower-Mathis is correct that "comparator evidence is not the exclusive means to establish an inference of discrimination." *Id.* at 20. But because Hightower-Mathis provided no information about her replacement, she had to rely on comparator evidence to make out a prima facie case. To illustrate, in *Wright*, we found that an African-American plaintiff established a prima facie case of race discrimination where he alleged that his employer replaced him with a white man. 455 F.3d at 707. Although the employer claimed that the plaintiff's statement about his replacement was baseless "hearsay," the employer provided no evidence to contradict his claim. *Id.* Bound to read material facts in plaintiff's favor on summary-judgment review, we adopted the allegation. *Id.* By contrast, Hightower-Mathis stated that she has no idea who replaced her or if NextCare replaced her at all.

As for comparator evidence, Hightower-Mathis cites *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001) for the proposition that "holding a plaintiff to the requirement that she produce similarly situated persons who were not discriminated against [would foreclose] other methods of proving intentional discrimination." CA6 R. 19, Reply Br., at 4 (quoting 252 F.3d at 872). But *Christian* was not an employment discrimination case. *Christian* dealt with discrimination by employees against private consumers. In fact, Hightower-Mathis quotes from a section of *Christian* in which we explicitly contrasted comparator evidence in the employment context—where coworkers are identifiable, traceable comparators—with the absurdity of asking individual consumers to identify other shoppers who faced discrimination at a store. *Christian*, 252 F.3d at 870-73. Hightower-Mathis's argument thus misrepresents the law on this issue. The district court's search for comparator evidence in this case did not "distort" *McDonnell Douglas*

or make comparator evidence "indispensable." CA6 R. 15, Appellant Br., at 16. Rather, after Hightower-Mathis failed to allege that NextCare replaced her with a person outside of her protected class, the court properly sought comparator evidence as Hightower-Mathis's only remaining channel for relief on her discrimination claim.

Hightower-Mathis next argues that the district court "improperly weigh[ed] credibility and resolv[ed] factual disputes against [her]" when assessing her comparator evidence. CA6 R. 15, Appellant Br., at 19. A "similarly-situated" comparator "need not be identical [to plaintiff], but should be similarly situated in all *relevant* respects." *Blount*, 55 F.4th at 511 (citation modified). Although "[s]uperficial similarities" between coworkers do not suffice to create comparators, *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008), courts may assess "[d]ifferences in job title, responsibilities, experience, and work record . . . to determine whether two employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004).

Hightower-Mathis offered two possible comparators. In her deposition, she described a white woman from another NextCare facility who was suspected of stealing money from the clinic. But Hightower-Mathis was not aware of the woman's name, her position at the facility, if NextCare fired her, or any facts about the incident. Hightower-Mathis also recalled training an African-American woman colleague who "went off on . . . patients" and was only employed at NextCare for a short time. RE 21-2, Hightower-Mathis Dep., PageID 291. But Hightower-Mathis similarly did not remember this woman's name, if she got fired or quit, or any other relevant information. Hightower-Mathis offered no other comparator evidence beyond the claims made in her deposition testimony. She was unaware of any patient service specialists who were fired for inappropriate comments or other "more serious" conduct. *Id.* at PageID 290-91.

Hightower-Mathis is correct that on a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor," leaving credibility determinations for the jury. *Anderson*, 477 U.S. at 255. But "conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Indeed, the non-moving party "must present some 'specific facts showing that there is a genuine issue [of fact] for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1996) (quoting *Celotex*, 477 U.S. at 324). Because Hightower-Mathis offered no factual evidence a jury could use to properly contrast her with her alleged comparators, the "inferences" she asks the court to draw from her scant allegations are not "justifiable." *Anderson*, 477 U.S. at 1986. She has therefore failed to show a genuine issue of material fact using comparator evidence. *See Fuelling v. New Vision Medical Laby's LLC*, 284 F. App'x 247, 255 (6th Cir. 2008).

Relatedly, Hightower-Mathis claims that the district court "discounted Plaintiff-Appellant's unequivocal denial of wrongdoing and treated Caver's silence as corroboration of the employer's version of events," improperly finding "the employer's narrative more credible" than her own. CA6 R. 15, Appellant Br., at 19-21. But this claim has no basis in the record or in the district court's opinion. The district court described the factual disagreement between appellant and appellee and noted that "for purposes of this motion, the Court credits *Plaintiff's* testimony." RE 28, Op. & Order, PageID 440 n.1 (emphasis added). And although the district court explained that "Caver prepared a written statement confirming that [Hightower-Mathis] asked . . . Gill if he has ever killed anyone," that language is hardly an endorsement of NextCare's narrative over Hightower-Mathis's. *Id.* at PageID 440. It is simply a neutral recitation of Caver's email. And

Hightower-Mathis herself testified that she asked Gill if he had ever killed someone, exactly as Caver described.

In sum, Hightower-Mathis cannot meet the fourth prong of the *McDonnell Douglas* test, so she cannot make out a prima facie case of race discrimination under Title VII, § 1981, or ELCRA. The district court properly dismissed her discrimination claims.

**B.** **Pretext**

Hightower-Mathis also argues that NextCare fired her "not because of a fair, independent, and objective assessment of the facts, but rather under the influence of reputational concerns." CA6 R. 15, Appellant Br., at 26. Pointing to the speed with which NextCare dealt with the incident involving the police officers, she argues that her termination was pretext for NextCare's improper motives. But because Hightower-Mathis did not make out a prima facie case of race discrimination, we decline to reach her pretext arguments.

**III.** **Hightower-Mathis's gender discrimination claims**

In her original complaint, Hightower-Mathis claimed that NextCare discriminated against her based on her gender in violation of Title VII and ELCRA. But Hightower-Mathis does not raise or discuss these claims in her brief, so she has abandoned them. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

**IV.** **Hightower-Mathis's hostile work environment/harassment claims**

Finally, Hightower-Mathis argues that the "court wrongly dismissed [her] hostile work environment claims." CA6 R. 15, Appellant Br., at 17. To prevail on her Title VII hostile work environment claim, Hightower-Mathis must show that (1) she "is a member of a protected class," (2) NextCare subjected her to "unwelcome harassment," (3) the harassment was based on her protected trait, (4) the harassment was "sufficiently severe or pervasive to alter the conditions of

[her] employment by creating an intimidating, hostile, or offensive work environment," and (5) NextCare "knew or should have known about the harassment" and did not act. *See Elzein v. Ascension Genesys Hosp.*, No. 24-1917, 2025 WL 2977940, at *5 (6th Cir. Oct. 22, 2025) (citing *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)).

Hightower-Mathis devotes less than one page of her brief to the argument that "[l]osing one's job within 24 hours of a racially charged encounter is precisely the kind of 'severe' alteration of employment conditions envisioned by" this court's hostile work environment caselaw. CA6 R. 15, Appellant Br., at 27 (quoting *Hawkins v. Anheuser-Busch, Inc*, 517 F3d 321, 333 (6th Cir. 2008)). She neglects to mention, however, her own admission that NextCare did not harass her based on her race or gender. When asked in her deposition if she believed that NextCare harassed her based on her race, Hightower-Mathis responded, "[n]o, I don't believe that they harassed me because of my race. I believe they harassed me because of what the police officer said [and they listened to him]." RE 21-2, Hightower-Mathis Dep., PageID 291-92. Hightower-Mathis confirmed that she had never complained to NextCare about harassment. And asked if her "harassment or termination" had anything to do with gender, Hightower-Mathis replied, "not from NextCare, no." *Id.* Because Hightower-Mathis herself does not believe NextCare harassed her based on her race or gender, no reasonable jury could find that NextCare subjected her to a hostile work environment.

## CONCLUSION

For these reasons, we affirm the district court's grant of summary judgment to NextCare.