NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0248n.06

Case No. 25-3844

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 29, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| SAVANNAH MOTON, | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| AMER SPORTS WINTER & OUTDOOR COMPANY, | ) | |
| | ) | |
|     Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: WHITE, THAPAR, and MATHIS, Circuit Judges.

THAPAR, Circuit Judge. Savannah Moton sued her former employer, alleging she was fired because of her race and in retaliation for an internal complaint she filed. But she didn't provide sufficient evidence that her race or the complaint motivated her firing. So the district court granted summary judgment to her former employer. We affirm.

I.

In October 2021, Amer Sports (Amer) hired Savannah Moton as a recruiter for one of its subsidiary companies, Arc'teryx, which sells outdoor gear. As a recruiter, Moton found potential job candidates, guided them through interviews, and worked with hiring managers to help Amer reach a final decision on each applicant. In Moton's words, starting this new job was "challenging" and "stressful." R. 10-1, Pg. ID 88. She had a lot to learn because she hadn't worked in the industry before. But despite these challenges, Moton thought she was performing well.

Unfortunately, others at Amer didn't agree. In late February 2022, after she had spent a few months at the company, Moton's manager, Joel Brideau, informed her that hiring managers in the brand-marketing team had some complaints about her work. They thought she was taking too long to find candidates for some roles, and they weren't sure that the candidates she did identify were good fits for roles at Amer. They also didn't think Moton was communicating clearly with them. So Brideau eventually reassigned Moton to work with other teams.

On May 9, 2022, Brideau sent an email documenting Moton's struggles to Mariah Marshall, a member of Amer's human-resources team. He described several communication issues in detail, including Moton's defensiveness, failure to stay in touch with candidates, and inability to provide clear answers to hiring managers. As Marshall put it, these "gaps in performance" meant that Moton's job was "at risk." R. 11-1, Pg. ID 284. In fact, the problems were so serious that Marshall thought they could lead to termination.

Later that same day, Moton reached out to Marshall and indicated that she wanted to file a report about Brideau. And two days later, she alleged that Brideau had discriminated against her because she is black. Specifically, Moton claimed that Brideau had treated her differently from other recruiters and told her during one meeting that she "needed coaching on her soft skills." R. 10-1, Pg. ID 234. She also mentioned a prior conversation in which Brideau had said he didn't "really agree" with diversity initiatives in hiring. *Id.* at 101. According to Moton, Brideau added that Amer's hiring should generally reflect the population of Vancouver (the location of its office), which was "mostly white[,] so that's probably what the applicants are going to be." *Id.*

Marshall investigated Moton's claims, but she didn't find evidence of discrimination or harassment. Instead, her findings confirmed what Brideau had already told her: Moton's performance "was not meeting expectations." *Id.* at 236–38. For example, Marshall noted that

Moton had sent an offer to a candidate without any agreement on the salary. And multiple other employees had complained about Moton's communication abilities with both candidates and her coworkers. So Marshall recommended a meeting between herself, Moton, and Brideau to discuss those performance issues. Moton expressed her disagreement with the finding of no discrimination, but she agreed to return to work after being on leave during the investigation.

When she returned, Moton began reporting to a different manager instead of Brideau. But that new arrangement didn't fix things. So Marshall again reviewed feedback from hiring managers and observations from others at Amer regarding Moton. That feedback revealed the same issues as before: Moton didn't communicate well, didn't follow company procedures, and didn't recruit adequate candidates. And although she didn't remember specifics, Marshall later testified that she likely spoke with Moton's new manager and eventually recommended Moton's termination. Amer fired Moton in June 2022.

Moton then filed a discrimination complaint with the Equal Employment Opportunity Commission. She alleged that Amer had discriminated against her based on her race and retaliated against her for complaining about that discrimination. The Commission later closed its investigation without making any determination on the merits of Moton's complaint. At that point, it notified Moton that she could sue Amer.

And that's exactly what Moton did. She claimed that Amer's alleged discrimination and retaliation had violated federal and state civil-rights laws. *See* 42 U.S.C. §§ 1981, 2000e; Ohio Rev. Code Ann. § 4112.02(A), (I). After completion of discovery, she moved for summary judgment on the retaliation claim, and Amer moved for summary judgment on all claims. The district court denied Moton's motion and granted summary judgment to Amer. It reasoned that Moton hadn't made a prima facie case of discrimination or retaliation because she didn't provide

sufficient evidence of discrimination based on more favorable treatment of a comparable employee or that retaliation had caused her termination. Moton timely appealed.

## II.

We review the district court's grant of summary judgment de novo. *Home Depot, Inc. v. Steadfast Ins. Co.*, 125 F.4th 769, 774 (6th Cir. 2025). On a motion for summary judgment, we review the evidence in the light most favorable to the nonmoving party. *See id.* Summary judgment is warranted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Moton can't establish a prima facie case for either discrimination or retaliation, the district court correctly granted summary judgment to Amer.

## A.

Start with Moton's race-discrimination claim. Both federal and Ohio law bar employers from firing an employee because of her race. 42 U.S.C. §§ 1981, 2000e-2(a)(1); Ohio Rev. Code Ann. § 4112.02(A).[1] Moton doesn't present any direct evidence that Amer fired her because she is black, so she must establish a prima facie case of race discrimination by showing that (1) she is a member of a protected group; (2) Amer subjected her to an adverse employment decision; (3) she was qualified for her position; and (4) Amer treated a similarly situated non-protected employee more favorably. *Smith v. City of Toledo*, 13 F.4th 508, 514–15 (6th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). Moton fails at the fourth hurdle. Even if the first three prongs were met, she doesn't point to any comparable employee

---

[1] Discrimination claims under Ohio law use the same framework as Title VII claims. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

whom Amer treated more favorably than her. *See Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 589 (6th Cir. 2014). That means she can't establish a prima facie case.

Moton admits that she doesn't have evidence of a comparator that Amer treated more favorably than her. But she says that's Amer's fault. A comparator employee must do the same job *and* be "subject to evaluation by the same decisionmakers" as the plaintiff. *Rachells v. Cingular Wireless Emp. Servs., LLC*, 732 F.3d 652, 662 (6th Cir. 2013). Here, Moton argues Amer didn't disclose who made the decision to terminate her, so it wasn't possible to provide a comparator.

Yet Moton had ample opportunities to identify a comparator during discovery, and she failed to do so. For starters, she could have asked Brideau and Marshall whether Amer treated other recruiters differently or replaced her with an employee of a different race. *See Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 510 (6th Cir. 2022). Likewise, she could have deposed other relevant employees, like Amer's "chief people officer," who made the "ultimate[] . . . decision[s]" on firing. R. 11-1, Pg. ID 303. Or, after identifying "evasive or incomplete" disclosures from Amer, she could have moved to compel Amer to disclose the final decisionmaker. Fed. R. Civ. P. 37(a)(3)–(4). And after discovery, she could have moved to sanction Amer for swearing to responses that she now considers "false." Appellant's Br. at 23–24. But she didn't take any of those steps. So Moton can't shift the blame to Amer for her failure to identify a comparable employee.

In the alternative, Moton argues that she doesn't need to provide a comparator at all. She points out that to establish a prima facie case of discrimination, she must show that Amer took actions from which one can infer that it's probable Amer fired her because of her race. *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015). Moton contends that we can draw that

inference here, even without a comparator, because Amer lied about who decided to fire her. In discovery, Moton asked Amer to "identify each person who played any role in the decision to terminate" her. R. 12-1, Pg. ID 597. Amer identified only Brideau. But in his deposition, Brideau said he didn't participate in the decision to fire Moton. And at Marshall's deposition, she admitted that she played a role in Moton's firing, probably by recommending her termination. Yet she didn't remember actually making that recommendation. Based on these inconsistencies, Moton asks us to "infer" that Amer is "attempting to conceal evidence of guilt" and find that she has established a prima facie case of discrimination. Appellant's Br. at 22–23 (citing *Philbrick v. Holder*, 583 F. App'x 478, 490 (6th Cir. 2014)). But that simply doesn't suffice to survive summary judgment.

For starters, Amer's inconsistent responses don't imply that Moton was fired because of her race. True, if an employer lies about the reason it fired someone, that lie could indicate the employer's reason is just pretext for discrimination. *See Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112, 122 (6th Cir. 2007); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). But a court only reaches the issue of pretext if the plaintiff has already made a prima facie case of discrimination. *See Smith*, 13 F.4th at 515. The cases Moton cites on appeal exemplify this rule. In each case, the plaintiff made a prima facie case of discrimination separate from any falsehood on the employer's part. *See Reeves*, 530 U.S. at 142 (showing replacement by employees not in the protected class); *Coburn*, 238 F. App'x at 119 (showing direct evidence of discrimination). Here, Moton hasn't made that case, either through direct or comparator evidence. So even if confusion about who fired her showed pretext, she could only rely on that pretext if she had already made out a prima facie case of race discrimination. Since she hasn't done so, pretext is irrelevant.

Moton responds that evidence of pretext may "buttress" her prima facie case. Appellant's Br. at 23 (quoting *Philbrick*, 583 F. App'x at 490). But that's true only if such evidence helps prove that she was treated differently from or replaced by similarly situated employees who weren't black. *See Philbrick*, 583 F. App'x at 490; *Blount*, 55 F.4th at 510. Moton's evidence of alleged pretext doesn't help prove differential treatment. That's because Amer's unclear explanation of who decided to fire Moton doesn't tell us anything about how Amer treated employees of different races. So Amer's inconsistencies can't help show that racial discrimination caused Moton's termination.

Moton then argues that, as a "general principle of evidence law," a factfinder can consider a material dishonesty as evidence of guilt. Appellant's Br. at 23 (quoting *Reeves*, 530 U.S. at 147). But that principle doesn't help Moton either. In *Reeves*, the Supreme Court found that the *combination* of a plaintiff's prima facie case and sufficient evidence that the employer was lying about its alleged justification could allow a factfinder to find discrimination. 530 U.S. at 148. But here, Moton has neither a prima facie case based on comparator evidence nor evidence that Amer is lying about the reason for her termination. In fact, Amer has consistently explained *why* Moton was fired: her poor performance as a recruiter. And the record backs up those explanations. Amer's evidence shows that Moton had issues communicating with hiring managers, following proper procedures, and finding suitable candidates—major aspects of her job. Those problems put her position in jeopardy, so Amer later terminated her.

At bottom, Moton needed to show evidence of Amer treating a similarly situated employee or new hire more favorably to establish a prima facie case of race discrimination. If "unexplained," that comparator evidence could make it "more likely than not" that the employer's actions were discriminatory. *Young*, 575 U.S. at 228 (quotation omitted). But confusion about who made the

ultimate decision to fire Moton doesn't make discrimination more likely than not. And that's especially true because undisputed record evidence suggests issues with Moton's performance caused her termination. A reasonable factfinder couldn't find that Amer discriminated against Moton because of her race, so her discrimination claim fails.

## B.

Moton also alleges that Amer fired her in retaliation for her internal complaint of race discrimination. Because she doesn't provide any direct evidence, Moton must establish a prima facie case that Amer retaliated against her. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020); *see also Moody v. Ohio Dep't of Mental Health & Addiction Servs.*, 183 N.E.3d 21, 36 (Ohio Ct. App. 2021) (applying the same test to Ohio state-law retaliation claims). That means she must show that (1) she engaged in protected activity; (2) Amer knew she had done so; (3) Amer took adverse employment action against her; and (4) her protected activity was the but-for cause of Amer's adverse action. *Kenney*, 965 F.3d at 448. Amer doesn't dispute that Moton has established the first three elements. But Moton hasn't shown that her complaint was the but-for cause of her firing, so the district court correctly rejected her retaliation claim.

Moton argues that the temporal proximity between her complaint and her firing establishes causation. Because she was fired five weeks after her discrimination complaint, she argues that we can infer the complaint caused her firing. But temporal proximity alone can't establish causation when an employer has "previously contemplated, though not yet definitively determined," the adverse action at issue and is simply "proceeding along [the same] lines." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam). Here, Amer had previously contemplated terminating Moton. Brideau had informed Moton of several issues with her performance in February, several months *before* she made her complaint. And as Marshall

indicated, Moton's job was at risk because she wasn't meeting expectations. In fact, Brideau sent Marshall an outline summarizing Moton's performance problems before Moton made her complaint. Marshall testified that she wouldn't move directly to termination based on that email, but she would have considered moving "straight to a termination" after speaking with Moton's manager. R. 11-1, Pg. ID 285. So before Moton complained about potential discrimination, Amer had "previously contemplated" firing her. *Breeden*, 532 U.S. at 272. And its ultimate decision to fire her proceeded along the same lines—her performance issues. That means Moton can't show her complaint caused her firing.

Moton provides two responses, but neither succeeds. First, she argues that the record doesn't show that Amer actually contemplated terminating her before the complaint. She's right that Brideau hoped to work through her performance problems and that Amer didn't fire her immediately after hearing about those problems. But she's wrong in claiming that there's "no record evidence" that Amer contemplated termination. Appellant's Br. at 31. After Marshall received a list of issues with Moton's performance—and *before* her discrimination complaint—Moton's job was "in jeopardy." R. 11-1, Pg. ID 284. Marshall said that those issues, plus a discussion with Moton's manager, could lead "straight to a termination." *Id.* at 285. So even though Amer hadn't "definitively determined" that it would fire her, it certainly "contemplated" doing so before her complaint. *Breeden*, 532 U.S. at 272. That defeats her argument for causation based on temporal proximity.

Second, Moton contends that Amer didn't fire her because of her performance, since it provided "no justification" for terminating her. Appellant's Br. at 33. But that's incorrect. The record is full of one consistent justification. Marshall testified that, while she didn't remember making the recommendation in this case, she likely relied on the gaps in Moton's performance to

decide whether to recommend her termination. And the record shows that several other employees at Amer had problems with Moton's performance. In other words, Amer's eventual adverse action "squares with the action previously contemplated": potential termination due to performance problems. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 507 (6th Cir. 2014). Because Amer previously contemplated Moton's firing, and because the performance issues persisted after her complaint, the temporal proximity between her complaint and termination isn't evidence of causation.

Moton argues our decision in *Montell* undermines this conclusion, but that case differs significantly from hers. In *Montell*, the company kept a written record of the employee's poor performance, just like Amer did. *Id.* But the employer in *Montell* also told the plaintiff that she had until a certain day "to improve or else face termination." *Id.* at 508. It then deviated from that plan by firing the plaintiff just a day after she complained about sexual harassment and before the date by which she needed to show improvement. *Id.* That's not what happened here. Rather, after Moton complained about potential racial discrimination, Amer completed a full investigation. And it eventually let her go based on performance issues that were documented both before and after she filed her complaint, without deviating from any established plan. Thus, Moton can't show that her complaint caused her firing based on temporal proximity alone. In turn, she can't make a prima facie case for retaliation, so her claim fails.

\* \* \*

We affirm.